NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 07-19446 |
| JOSEPH BOLDIZAR AND<br>JACQUELINE D. BOLDIZAR | : | Chapter 7 |
| Debtors | : | |
| THOMAS J. ORR, TRUSTEE | : | |
| Plaintiff, | : | |
| vs. | : | Adversary No. 07-2785 |
| LAURA BOLDIZAR | : | |
| Defendants | : | Trial Date: 1/13/2009<br>**MEMORANDUM OPINION** |

## APPEARANCES

Jason S. Feinstein, Esquire
STERNS & WEINROTH
50 West State Street - Suite 1400
PO Box 1298
Trenton, New Jersey 08607-1298
**Attorney for Thomas J. Orr, Trustee / Plaintiff**

John F. Bracaglia, Jr., Esquire
COHN, BRACAGLIA & GROPPER
275 East Main Street
PO Box 1094
Somerville, New Jersey 08876
**Attorney for Laura Boldizar, Defendant**

**The Honorable Kathryn C. Ferguson, USBJ**

Thomas Orr, Chapter 7 Trustee in the matter of Joseph and Jacqueline Boldizar, brings this complaint against Laura Boldizar, daughter of the Debtors. The Complaint seeks to recover equity gifted from the Debtors to Laura on a fraudulent transfer theory, specifically under 11 U.S.C. § 544(b) and N.J.S A. § § 25:2-25(a), 25(b) and 27.  The matter was tried on January 13, 2009, and the Court reserved decision.  The following constitutes the Court's findings of fact and conclusions of law.

**Factual background**

The facts, as this Court finds them, were largely undisputed. On June 26, 2000, Joseph and Jacqueline Boldizar (the "Debtors") purchased a home at 18 Pennsbury Way, East Brunswick, N.J. for $245,000.  Shortly thereafter, they ran into some financial difficulties and entered into a series of refinances that enabled them to extract equity from the property and cure mortgage and other arrearages.  Each refinance was facilitated by Advisors Mortgage Group, LLC.   One of the Debtors's refinances closed on February 25, 2005 with a mortgage amount of $307,000.  It was supported by an appraisal, as of February 16, 2005, for $390,000.   In the Fall of 2005, the Debtors sought to refinance again. Although the Debtors were unable to close that loan, they obtained an appraisal that valued the property at $435,000 as of September 28, 2005.

By this time, the Debtors's credit rating had deteriorated to the point where they no longer qualified for additional loans. An Advisors representative named Scott suggested that the Debtors temporarily transfer title to the property to their credit-worthy daughter, Laura Boldizar, and have her enter into the refinance they required. On December 23, 2005, the Debtors sold the property to Laura, and she took out a new loan with Advisors in the amount of $352,000. The settlement sheet

listed a purchase price of $470,000. The price was offset by $122,000 listed as "gift of equity" and $14,168.42 as "concession." The refinance papers contained an appraisal of the property as having a value of $470,000 as of November 22, 2005.

Laura refinanced the property again on or about March 6, 2006 for two loans totaling $385,000. The loans were based on a February 3, 2006 appraisal of the value of the property at $470,000.

Neither the Debtors nor Laura Boldizar consulted with nor were represented by an attorney for any of these transactions. Laura Boldizar neither paid nor received money in connection with the transactions. In each instance, the Debtors used the net proceeds from the refinance to cure mortgage arrearages and pay down other debt. At the time of each refinance, the Debtors were behind in their mortgage payments as well as behind in payments on other debts, and were being threatened with foreclosure. No consideration was paid by Laura in exchange for the gift of equity or the concession. Nor did the Debtors owe any debt to Laura at the time of transfer. The Debtors have continuously resided in the property and have made all payments, to the extent that payments were made, in connection with the property.

## Discussion

As authority for this fraudulent transfer action, the Trustee cites 11 U.S.C. § 544(b). That statutes provides that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim[.]" The applicable law here is the New Jersey Uniform Fraudulent Transfer Act. The NJUFTA provides:

>   A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
>> b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>>> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
>>> (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

*N.J.S.A.* § 25:2-25.

Subsection (a) requires a finding of intent. Although intent may be inferred, Gilchinsky v. Nat'l Westminster Bank, 159 N.J. 463, 475 (1999), I am unwilling to do so on this record. The Debtors transferred title of their largest asset to an insider and retained possession, but none of the other badges of fraud pertain: they did not conceal the transaction, remove or conceal other assets, were not under a particularly new threat of foreclosure litigation, and did not transfer in connection with incurring a substantial debt. *See, N.J.S.A.* § 25:2-26. Perhaps more importantly, the Debtors testified credibly that they were doing what they could to save their home and did not understand this transaction to be significantly different than the previous refinances for the same purpose. They had some notion that they were transferring title, but their testimony did not indicate a clear understanding of all of the ramifications. They credibly testified that they thought their daughter would simply transfer title back to them as their financial situation improved. They used the modest

net proceeds of the sale to pay down some of their unsecured debt. To the extent that the Trustee's cause relies on a finding of intent to hinder, delay or defraud any creditor, judgment must be denied.

Subsection (b) does not require a finding of intent. *See, N.J.S.A.* § 25:2-25(b). Under that section a transfer is deemed fraudulent if: (1) the Debtors did not receive reasonably equivalent value in exchange for the transfer; and (2) the Debtors reasonably should have believed that they were incurring debts beyond their ability to pay as they became due. *Id*. Both requirements are problematic for the Debtors. There can be little argument but that they reasonably should have believed that this was more debt than they could pay: they had been forced to refinance pretty much semi-annually for several years and the principal balance went up each time they refinanced. Nothing in the record suggests that it would have been reasonable for the Debtors to assume that they would be able to make payments on a higher principle balance when they had been so utterly unable, despite working as hard as they were physically able, to make payments on a lower principle balance.

The record also compels a finding that the Debtors did not receive reasonably equivalent value for the transfer to their daughter. The settlement sheet from the closing reflects that the property was sold for $470,000, but that there was a reduction in the purchase price of the $136,168.42. There is no evidence to suggest that the reduction in purchase price, in the form of a "gift" and a "concession", was anything other than completely gratuitous. As previously noted, the Debtors did not owe any debt to Laura and she did not pay any consideration for the price

reduction.[1]

The finding that there was a fraudulent transfer of the $136,168.42 is based on a finding that the value of the property at the time of the transfer to Laura was $470,000. The Court has serious reservations about the reliability of the appraisals setting the value of the property at $470,000, given that the appraisals were generated specifically to allow a refinance in a certain amount. The Court appreciates that the Debtors and Laura forthrightly testified that they had no opinion of the value of the property in December of 2005, however, that means that those appraisals are the sole evidence of value at the time of the transfer. The record is also devoid of any evidence regarding the current value of the property. That is not surprising, since the only relevant value for fraudulent transfer purposes is the value at the time of the transfer. The Court wistfully notes, however, that because of what has happened to residential real estate values since the time of the transfer, the ruling compelled on this record could well force the Debtors from their home and leave the Trustee with little or no equity to disburse to creditors. Nonetheless, the record compels a finding that the Debtors did not receive reasonably equivalent value for the transfer.

Finally, because the case is resolved under N.J.S.A. 25:2-25(b), I do not need to reach the argument the Trustee makes pursuant to N.J.S.A. 25:2-27(a). The transfer was a fraudulent

---

[1] "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied ...." *N.J.S.A.* § 25:2-24(a).

6

conveyance of property under N.J.S.A. 25:2-25(b), and so judgment on behalf of the Plaintiff is granted. Attorney for Plaintiff shall submit a form of judgment in accordance with this opinion.

                                                  */s/ Kathryn C. Ferguson*
                                                  KATHRYN C. FERGUSON
                                                  US Bankruptcy Judge

Dated: April 15, 2009